Good afternoon, Your Honors. Lamar Peckham for Julio Cesar Fernandez. Your Honor, the first thing I want to discuss is whether there is a liberty interest for due process analysis because counsel brought that issue up. And I will say that for a very long time the Supreme over said that there was a liberty interest in a person who's facing deportation. In fact, I found a case after I'd submitted my citations, a case from 1893, Fong Tui Ting versus U.S. 149 U.S. 698 said deportation is punishment. It involves first an arrest, a deprival of liberty, and then it goes on to talk about the banishment is the punishment that is attendant on this deprival of liberty. And of course, there are other cases too that I cited in my, I think it was my letter, that since 1948, 1948, Haw Tan, 1951, let's see, Jordan v. DeGeorge. Anyway, there are many cases. The Supreme over and over said that deportation implicates a person's liberty interest. Therefore, that answers the question about whether is this a due process case. And certainly it is. And the due process analysis is put forward in Montgomery Ward, the case of Montgomery Ward. But before I get to that in the Ninth Circuit issued the Carr v. INS decision that assault with a deadly weapon is not a crime of moral turpitude. 1998, that's when my client pled guilty to 245A1 charge. It wasn't until 2001, three years later, that the California Supreme Court clarified the mental state that was required to be guilty of that offense. However, this Court kept citing Carr favorably. Well, didn't we also say in Cerrone that Carr was directly contrary to a controlling panel decision and it lacked the authority to overrule that decision? Well, that may be true. I mean, I don't doubt that. And I'm not saying that the Court did not say that because the Court did say that. But that would put somebody certainly on notice that the law is unsettled in this area. I'm sorry, Cerrone would put a person on? The fact that you get a decision, Carr, that's inconsistent with another decision that predates Carr and is inconsistent with it would put someone on notice that the law is unsettled in this area. Well, it doesn't appear to have put the Court on notice of that because the Court kept citing Carr v. INS clear up until 2013. So, I don't see how he would be on notice that a case of 40 years before Carr would make Carr, and yeah, would make it invalid. I don't see how that could possibly be. And it wasn't until 2014 that this Court in Cerrone actually reviewed the issue and determined that it needed to go back under Chevron to the Board of Immigration Appeals. And I'm not arguing about Wu. I'm not arguing about whether the Board of Immigration Appeals made a correct decision. That's not even part of what we're doing here. This is about retroactivity, whether this was achieved. Do you concede that if we rule against you on the Montgomery Ward issue, that matter of Wu is entitled to Chevron deference and would be dispositive? Certainly, I can't argue against that. Now, I want to say that the Court's recent decision in Betsanos v. Barr in July of this year, certainly it's a different criminal statute that's being discussed, but the argument and the Montgomery Ward analysis is virtually identical. Unless, well, no, I'm just going to say it's virtually identical. Certainly, this was an abrupt departure from Carr v. INS, no question about that. And my client relied on that decision, which had come two years before his criminal conviction. So no question that he relied on it. It puts a grievous burden on him. In fact, may I say that reliance in Betsanos, reliance is presumed if the Court's former favorable rule was in place at the time the petitioner pleaded guilty, and certainly was. And as far as burden, in Betsanos, the Court also said deportation alone is a substantial burden that weighs against retroactive application of an agency adjudication. And in this case, that further burden and the prejudice to him was he was unable to present his claim for cancellation or removal. He didn't have a hearing on it. What he had a hearing on was whether he was precluded from even presenting his evidence and his equities for cancellation or removal. He didn't have a chance to do that. And cancellation was his only possible relief from removal. Therefore, he was completely out of court because of this. Now, I'm not going to say that there wasn't a statutory interest, though. In Betsanos, the Court said that it only leans in favor of the government. Isn't a point that is on their side in the Montgomery Ward analysis. So I'd say that under Betsanos and these other cases, my client should not suffer the retroactive application of woe because it definitely is a retroactive application. Now, did CORE involve the same subsection of this statute that your client was convicted on? Well, my client, in my client's case, it's an inconclusive record. So we don't know whether it was a firearm, a deadly weapon, or force likely to produce great bodily injury. That is not, though we attempted during the proceedings to find out which it was, there was no evidence. Isn't your client the man who picked up a pipe and followed another person and swung at him? If I might, Your Honor, that issue was raised when Silva Trevino was applied to this case. It was an inconclusive record and the judge held a Silva Trevino 1 hearing to determine whether it was a crime involving moral turpitude. That isn't part of this record. That is part of a previous appeal of my client to this court. But Silva Trevino, that was an improper use of extrinsic evidence to prove, you know, which one of these offenses he had committed. But don't we know that it's under A-1 as opposed to A-2, the firearm? A-1 is not a firearm. At the time of his conviction, they were all in one paragraph. They weren't separated into three paragraphs under 245-A. No, the A-4 was separated out later with one of the clauses that was in A-1 was moved. Yes. But you're saying that at the time of his conviction, A-1 covered firearms as well, as opposed to— I believe so. I'm not looking at it right this minute, but that's my recollection. I mean, because Carr dealt with A-2, firearms, and Barber dealt with A-1, which—so Barber, wouldn't Barber be the more controlling case than Carr? Well, I have to say, I don't know what 245-A looked like in 1953. I don't have the answer to that. So I can't answer your question. I don't know. What was the year he was convicted? That's— 1996. And did A-1 cover firearms at that time? I don't think so. I think it was— Deadly weapons other than a firearm. Deadly weapon. Yeah, other than a firearm. Or force likely to produce, create bodily injury. Yeah. I'm sorry. Is there another question that I haven't answered? No. I'd like to if I can. All right. I'll reserve the rest of my time. Thank you very much. Thank you. Thank you. May it please the Court, Chris Buchanan for the respondent, United States Attorney General. Your Honor, this petition for review should be denied because the retroactivity analysis favors retroactive application of matter of woe here. And as Petitioner conceded, the substantive content of woe is not in dispute. Rather, this case rises or falls solely on whether or not the agency could retroactively apply matter of woe. And because the four factors laid out in Montgomery Ward favor retroactive application, the Court should deny this petition. At the heart of the issue before the Court and respondent's view is that there was no guilty to Section 245A1. And as laid out in respondent's brief at page 15, Section A1, as the Court pointed out, involves a deadly weapon or serious bodily or use likely to produce serious bodily injury but did not involve a firearm. And that's a distinguishing characteristic between Petitioner's conviction and the Carr case in 1996. But the Court cannot undertake an analysis of the law in existence in 1998 at the time of conviction without accounting for the precedents that this Court has already examined in its en banc case in Saron. And there, the positive law that speaks to whether or not a Section 245A1 conviction is a crime of moral turpitude begins in 1947 with the matter of GR, a board precedent. And it continues also in 1953 with precedent from this Court in the Barber case. And it is those positive points of law under which Petitioner's conviction in 1998 was a crime of moral turpitude. And so when asking where the change of law occurred, because that is the second factor in the Montgomery Ward retroactivity analysis, that change didn't occur in 1998. And instead, that positive law, Barber, remained on the books until 2014 when it was overturned by this Court. And in that same year, this Court repudiated the matter of GR and identified two points in time which bookend Petitioner's conviction, two occurrences in time that bookend Petitioner's rationale under Barber and GR. And so when the agency, so the void created here occurred in 2014. In 2017, when the agency issued matter of Wu, the result in matter of Wu was still the same as the result under Barber. And instead, it was the rationale that had changed. So why do you seemingly assume then in your brief that there is a retroactivity analysis to be conducted at all? Your Honor, we address retroactivity analysis because Petitioner's due process claim was framed as an improper retroactive application that implicates the Montgomery Ward analysis factors. And so, you know, the first half of our brief up through page 22 addresses the, I'm sorry, after page 22 addresses the propriety of Montgomery Ward factors in terms of retroactive application. And as Petitioner conceded, because the substantive content of matter of Wu is not in dispute, this case rises or falls on whether or not matter of Wu should be retroactively applied here. And the answer is yes, because the favors under Montgomery Ward favor the factors, I'm sorry, under Montgomery Ward favor retroactive application. And that's because there's simply no abrupt change in the law. And at best, what Petitioner can point to, and I think the Court heard this when the Petitioner referenced the Carr case, which was issued in 1996, two years prior to his conviction. But the Carr case didn't purport to overrule Barber. It didn't address Barber. It didn't present any rationale about Section 245A1, Petitioner's, the section under which Petitioner was convicted. And but what it did do, as we see later in this Court's en banc case in Sirono's, it sat in conflict with Barber, a prior precedential decision by the Court. And so at most, in 1998, Petitioner had an argument. But what he did not have, and what he can't point to, is a change in the law. Because the law, in effect, at the time, from 1947, from 1953, up through 1998, was that his Section 245 conviction was a crime of moral turpitude. And nonetheless, things did change. But it wasn't the result of the law. It was the underlying rationale in that Barber case and in the GR case. And when the Board answered this Court's concern, and it's after issuance of Sirono in 2014, the Board came to the very same conclusion, albeit under a different rationale, where it examined the effects of the introduction of the categorical approach. Presented by Taylor in 1990, that's one of the events identified by this Court as having contributing to the erosion of the rationale underlying Barber and GR. But the other contributing event, and it's the confluence of these that's important, the other contributing event was the issuance of People v. Williams in 2001, three years after Petitioner's guilty plea. So there can be no detrimental reliance on half of the two factors that this Court issued in Sirono. And that takes us to the Montgomery Ward factors number three, which is detrimental reliance. And the at-most Petitioner can only show that he relied upon an argument that this Court enfleshed in 2014, but which existed in 1998. What he cannot do is point to the confluence of those, which was what this Court found persuasive enough to both overturn Barber and repudiate matter of GR. He can't lay claim to that, to the confluence of those, because his conviction, he pled to prior to one of those two events. As to the Petitioner's reliance on the Batanzas case, which he mentioned in his 28J letter, Respondent would just point out that detrimental reliance was one, was a factor in that case that cut against the Petitioner, because the Petitioner simply couldn't show reliance on a change of law. And unlike this case, in that case, there was a change of law in terms of the Board's analytic precedent addressing the convictions in that case, which dealt with a, well, unlike the conviction, unlike, had nothing to do with Section 245. The takeaway, though, is that both of those factors have to favor Petitioner in order for him to prevail in the case here, and because he cannot show an abrupt change in the law, because Sarin makes plain that at all, that in 1998, the controlling law was Barber, and the controlling law was also matter of GR. And I remind the Court that the Sarin 2 case addressed a 2006 conviction under Section 245, so eight years after Petitioner's own conviction. And if, as this Court made plain, you know, the Board's reliance on GR, the Board's reliance on Barber in its analysis of that 2006 conviction was sound. That's the characterization of this Court, because both of those cases were controlling precedent, also the characterization of this Court. Then when we look at Petitioner's case and ask what was the law in 1998, the controlling precedents also commanded that his conviction was a crime of moral turpitude. And so he had no, simply had no assurance that his conviction would have produced, would have somehow not made him statutorily ineligible. Thus, Petitioner cannot show an abrupt change in the law. And as this Court is well aware, the second and the third factors of Montgomery were closely intertwined, and so the detriment of reliance necessarily presupposes a change in the law. There is no change in the law here, not in result, although in rationale, but the proprietary rationale is not before the Court, because there's no dispute about that. And so where there is no change in the law, then there is no detriment of reliance. And to the extent that Carr has any play here, it is only to form an argument and not the requisite change of law that Montgomery Ward retroactivity analysis is sensitized to and designed to tease out as a matter of equity. So on balance, the Montgomery Ward factors favor retroactive application of matter of woe. There's no abrupt change of the law, and there's been no reliance on the change that didn't occur. And while there has been a change in the rationale, at all times, the positive arc of the law at all times has been that the Section 245 conviction, such as Petitioner's, is a crime of moral turpitude. For that reason, subject to your questions, the Respondent would ask that this Court deny the petition for review. Thank you very much. Thank you, Your Honor. Thank you. I don't have much to say, but I do want to, again, repeat that in Betanzos, it's stated very clearly that there's a presumption of prospectivity where the judicial decision defers to the agency's brand X decision, and also that deportation alone is a substantial burden that weighs against retroactive application of an agency adjudication. But at the same time, I'm not agreeing with the counsel that Carr does not apply in this case. I leave that to the courts. Obviously, the whole case is to the court's discretion and decision. Now, thank you very much for hearing me today. Thank you. Submitted. The case of Fernandez v. Barr will be submitted.
judges: Bea, Collins, Bress